This is a petition for a writ of mandamus directed to the Honorable Donald W. Stewart of the Circuit Court of Etowah County, Alabama. Petitioner seeks to have Judge Stewart's order denying its motion to dismiss vacated or in the alternative to transfer venue to Madison County, Alabama. The writ is denied.
Webco Tool and Die, Inc., plaintiff, sued GTE Automatic Electric, Inc., defendant-petitioner, alleging that GTE owed Webco $9,693.50 for work and labor done, by open account, and on an account stated. GTE moved that the court dismiss the complaint or in the alternative transfer the case to Madison County. The motion averred that venue in Etowah County was improper because GTE did not do business by agent in that county, neither at the time the complaint was filed nor at the time the cause of action allegedly arose.
"The scope of our review of a venue determination by a writ of mandamus is to `determine whether judgment or discretion of the lower court has been abused and exercised in an arbitrary and capricious manner.'" Ex parte Jim Skinner Ford, Inc.,435 So.2d 1235, 1236 (Ala. 1983), quoting, Ex parte Wilson,408 So.2d 94, (Ala. 1981). A writ of mandamus is not properly granted unless it is clearly shown that the trial court erred to the injury of the petitioner. Id. at 1237.
Ala. Const. art. XII, § 232, and § 6-3-7, Code of Alabama 1975, provide that a foreign corporation, qualified to do business in Alabama may be sued in any *Page 387 
county in which it is doing business by agent at the time the suit is filed. See also, Ex parte McGugin, 423 So.2d 1367 (Ala. 1982). To come within the definitional parameters of "doing business" in a county does not require that a business maintain an office in that county. See, Liberty Life Assurance Societyv. Woodard, 219 Ala. 24, 121 So. 30 (1929). Past "isolated transactions" are inconclusive in establishing that a corporation "does business" in a particular county for purposes of venue. Ex parte Harrington Manufacturing Co., 414 So.2d 74
(Ala. 1982). All that is required is that GTE "performed some of the business functions for which it was created in the county with some degree of regularity." Ex parte Jim SkinnerFord, Inc., supra, at 1237.
Webco, a tool and die manufacturer, has done business with GTE for over twelve years, making piece parts inter alia for GTE. During this twelve-year period, agents of GTE visited Webco's plant at least twice a month where they would work with Webco's employees, assist Webco's engineers and discuss the business relationship between Webco and GTE. GTE frequently sent representatives to Webco's plant to assist in resolving casting problems that arose with new products. GTE's plant manager, superintendent and purchasing agent all made annual inspection tours of Webco.
GTE supplied Webco with certain tools and equipment necessary for manufacturing the parts ordered by GTE. The tools and equipment were maintained and stored at Webco for the purpose of filling orders by GTE as they came in. GTE frequently supplied Webco with the necessary raw materials to make the ordered parts. The president and general manager of Webco testified in deposition that over $2,600,000 worth of such business was done between Webco and GTE. In light of such evidence the trial court was not unreasonable in finding that GTE did business in Etowah County.
Without conceding that GTE had done business in Etowah County, GTE argues that no relationship at all existed between GTE and Webco at the time suit was filed. GTE insists that Webco's "`understanding' that GTE would continue to order the piece parts or other equipment from it at a price, quantity, quality and delivery date to be determined at some time in the future, cannot constitute GTE's doing business in Etowah County at the time suit was filed."
Apparently the type of contractual relationship existing between GTE and Webco was an open account. Webco's president described the relationship as follows:
 "Webco was requested by GTE to `gear up' to handle their orders, and . . . that such orders would be placed until the piece parts either became obsolete or were no longer in use. This agreement and the agreements that are being sued on in this case were still in effect at the time this suit was filed in Etowah County. I had received no notice, whatsoever, from anyone, that any of those agreements had been repudiated, terminated or revoked. I was only aware that there was a dispute over the payment of the invoices that I have sued upon."
GTE seems to argue that because it placed no further orders with Webco and did not send any more agents to Webco one day prior to filing suit, the contractual relationship ceased to exist. The Alabama Supreme Court stated:
 "This court cannot adopt a policy that would allow a foreign corporation qualified to do business in Alabama, upon the occurrence of any problem which might arise during performance of a contract, to remove all of its agents from that county and thereby force a person injured or damaged to sue the corporation in the county of the corporation's choosing. The traditional notions of fair play prevent a determination which would create such an injustice, especially when the claim of injury arises out of the business done in the county."
Ex parte McGugin, supra at 1370. Because GTE has placed no orders since the suit was filed does not mean the business *Page 388 
relationship was terminated making venue in Etowah County improper.
We do not find that the trial court abused its discretion or acted arbitrarily and capriciously, and there is no clear showing of error to GTE's prejudice, therefore the writ of mandamus is denied.
WRIT DENIED.
BRADLEY and HOLMES, JJ., concur.