834 So.2d 79 (2002)
Ex parte SCOTT BRIDGE COMPANY.
(In re Tim Bond v. Scott Bridge Company).
1001558.
Supreme Court of Alabama.
February 22, 2002.
Rehearing Denied May 3, 2002.
*80 Thomas S. Thornton, Joseph H. Driver, and Khristi Doss Flood of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Birmingham, for petitioner.
Clay Hornsby of Morris, Haynes & Hornsby, Alexander City, for respondent.
SEE, Justice.
Tim Bond worked for Scott Bridge Company, a bridge construction company with its principal office in Lee County. Scott Bridge discharged Bond in April 2000, after Bond was injured on the job. Bond brought a retaliatory-discharge claim, seeking compensatory damages and punitive damages under § 25-5-11.1, Ala.Code 1975, which states that it is unlawful for an employer to fire an employee "solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits." Bond filed his claim in Chambers County, and Scott Bridge moved for a change of venue to Lee County. The trial judge denied the motion. Scott Bridge seeks a writ of mandamus directing the trial court to vacate the order denying the change of venue and to transfer the case to Lee County.
Scott Bridge argues that the case should be transferred to Lee County because, it says, § 6-3-7, Ala.Code 1975, states that, as to a foreign corporation or a domestic corporation, venue is proper:
"(1) In the county in which a substantial part of the events or omissions giving rise to the claim occurred ...; or
"(2) In the county of the corporation's principal office in this state; or
"(3) In the county in which the plaintiff resided ... at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiff's residence; or
"(4) If subdivisions (1), (2), or (3) do not apply, in any county in which the corporation was doing business by agent at the time of the accrual of the cause of action."
It is uncontested that Scott Bridge's principal place of business is in Lee County, and that Bond's discharge took place in Lee County. Bond lives in Chambers County, and he argues that venue in Chambers County is proper under § 6-3-7(a)(3), Ala.Code 1975, because, he argues, Scott Bridge does business by agent in Chambers Countyit purchases materials from a Chambers County business. Scott Bridge argues that it does not do business by agent in Chambers County, and, thus, that the only proper venue for the action is Lee County.
A petition for the writ of mandamus is the proper method by which to seek review of a denial of a motion for a change of venue. Ex parte Alabama Great Southern R.R., 788 So.2d 886 (Ala.2000). "Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked *81 jurisdiction of the court." Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995). This Court reviews a petition for a writ of mandamus challenging a ruling on venue under an abuse-of-discretion standard. Id.
"The burden of proving improper venue is on the party raising the issue and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge."
Ex parte Finance America Corp., 507 So.2d 458, 460 (Ala.1987).
Scott Bridge bears the burden of proving that venue in Chambers County is improper. If Scott Bridge's activities in Chambers County are sufficient to qualify as "doing business by agent" in that county under § 6-3-7(a)(3), Ala.Code 1975, then venue is proper in Chambers County, and the writ of mandamus directing a transfer of the case to Lee County should not issue. If those activities are not sufficient, however, the writ of mandamus directing the trial court to transfer the case to Lee County should issue.
"A corporation `does business' in a county for purposes of § 6-3-7 if, with some regularity, it performs there some of the business functions for which it was created. Ex parte Real Estate Financing, Inc., 450 So.2d 461 (Ala.1984); Ex parte Southtrust Bank of Tuskegee, 469 So.2d 103 (Ala.1985)." Ex parte SouthTrust Bank of Tuscaloosa County, N.A., 619 So.2d 1356, 1358 (Ala.1993). This Court has made the following distinction between those corporate business functions for which a corporation was created and the exercise of corporate powers incidental to those corporate business functions:
"It should be noted that not every act done within the corporate powers of a foreign corporation will constitute doing business within the meaning of the statute. We recognized in International Cotton-Seed Oil Co. [v. Wheelock], 124 Ala. [367,] at 370-371, 27 So. [517,] at 518 [(1899)], that in applying the test for doing business `it may not always be easy to distinguish between acts done in the exercise of corporate functions and those done merely within corporate powers.'"
Ex parte Charter Retreat Hosp., Inc., 538 So.2d 787, 790 (Ala.1989).
Scott Bridge notes that it is in the business of constructing bridges and it argues that because it has not built a bridge in Chambers County, it has not "done business by agent" there. The business of Scott Bridge, however, should not be considered so narrowly. To fulfill its principal corporate function of building bridges, Scott Bridge must purchase parts, tools, and equipment with which to perform that principal corporate function. Bond asserts, and Scott Bridge does not refute, that Scott Bridge buys from businesses located in Chambers County supplies that cost in excess of $50,000 a year.
The Court of Civil Appeals, using this Court's guidance as to what constitutes sufficient evidence of "doing business," discussed a business relationship between a company and its parts supplier as follows:
"Past `isolated transactions' are inconclusive in establishing that a corporation `does business' in a particular county for purposes of venue. Ex parte Harrington Manufacturing Co., 414 So.2d 74 (Ala.1982). All that is required is that GTE `performed some of the business functions for which it was created in the county with some degree of regularity.' Ex parte Jim Skinner Ford, Inc., [435 So.2d 1235, 1237 (Ala. 1983) ].
"Webco, a tool and die manufacturer, has done business with GTE for over *82 twelve years, making piece parts inter alia for GTE. During this twelve-year period, agents of GTE visited Webco's plant at least twice a month where they would work with Webco's employees, assist Webco's engineers and discuss the business relationship between Webco and GTE....
"... The president and general manager of Webco testified in deposition that over $2,600,000 worth of such business was done between Webco and GTE. In light of such evidence the trial court was not unreasonable in finding that GTE did business in Etowah County."
Ex parte GTE Automatic Elec., Inc., 448 So.2d 385, 387 (Ala.Civ.App.1984).
While this Court has not been provided with as detailed a description of Scott Bridge's interactions with its parts supplier in Chambers County as the Court of Civil Appeals was provided with of GTE's relationship with its parts supplier in Ex parte GTE Automatic Electric, Inc., the information that this Court does have regarding Scott Bridge's interactions with its supplier in Chambers County is that Scott Bridge "purchased handrail pipe, handrail posts, protection anchors, supports, and shoes which are used in Scott Bridge's business [of bridge building]." (Trial court's order denying the motion for a change of venue.) Scott Bridge could presumably have purchased these materials elsewhere, and thus fulfilled its corporate purpose entirely outside of Chambers County, but spending more than $50,000 per year in Chambers County on materials necessary to bridge construction is sufficient to constitute "doing business" in Chambers County.
Scott Bridge's purchases of bridge parts from suppliers in Chambers County can be distinguished from other, more tangential relationships that this Court has deemed insufficient to constitute "doing business."
Specifically, this Court held in Ex parte Parsons & Whittemore Alabama Pine Construction Corp., 658 So.2d 414 (Ala. 1995), and in Ex parte Real Estate Financing, Inc., 450 So.2d 461 (Ala. 1984), that retaining the services of an attorney in the forum county on a case-by-case basis did not constitute "doing business" in that county, where the businesses of the companies were construction and real estate financing, respectively. Hiring an attorney was tangential to the companies' fulfillment of their primary business functions. Scott Bridge's primary business function of building bridges, however, immediately and directly depends upon the transactions it has with its Chambers County suppliers.
Scott Bridge does not argue that it would be prejudiced if it were forced to litigate in Chambers County. Chambers County and Lee County are contiguous counties, and the additional hardship created by traveling to the neighboring county is not substantial. We therefore hold that the trial court did not abuse its discretion in denying the motion for a change of venue from Chambers County to Lee County, because Scott Bridge did not carry its burden of proving that venue in Chambers County was improper.
PETITION DENIED.
MOORE, C.J., and HOUSTON, LYONS, BROWN, JOHNSTONE, and HARWOOD, JJ., concur.
WOODALL and STUART, JJ., dissent.
STUART, Justice (dissenting).
I respectfully dissent. I do not agree that purchasing materials in a county, regardless of the dollar amount of the materials purchased, constitutes "doing business by agent" in that county for purposes of determining proper venue under § 6-3-7(a)(3), *83 Ala.Code 1975. I would grant the petition for the writ of mandamus.