WOODALL, Justice.
Keith Lanier Clayton petitions this Court for a writ of mandamus directing the trial court to grant Clayton’s motion to dismiss the indictment against him on the ground that a trial premised upon the indictment is barred by the doctrine of collateral estoppel as embodied in the Fifth Amendment guarantee against double jeopardy. We deny the petition.
This case arises from an incident that occurred on March 14, 2002, at the Huey-town residence of Marlin and Brenda Myr-ick. Marlin, Brenda, and Doyes Dickey, their neighbor, after dining together at a restaurant, returned to the Myrick residence in an automobile; Marlin was driving. After parking the automobile in his driveway, Marlin got out of the vehicle through the driver’s door, while Brenda and Dickey got out on the passenger side. Brenda and Dickey were immediately approached by a person with a pistol, who robbed Brenda of her purse and its contents. On the other side of the vehicle, another armed assailant robbed Marlin of his wallet. The robbers fled from the scene. On April 11, 2002, Brenda and Dickey viewed a lineup and identified Clayton as the person who had taken Brenda’s purse.
Subsequently, two indictments for first-degree robbery, a violation of § 13A-8-41, Ala.Code 1975, were returned against Clayton. In case no. CC-02-876, Clayton was charged with the first-degree robbery of Doyes Dickey. In case no. CC-02-877, the subject of this petition, Clayton was charged with the first-degree robbery of Brenda Myrick. In April 2003, Clayton was tried for the alleged robbery of Dickey and was acquitted of that charge by the jury’s not-guilty verdict.
After his acquittal in case no.. CC-02-876, Clayton promptly filed a motion to dismiss the indictment in ease no. CC-02-877, alleging “that the State is collaterally estopped from prosecuting [him] again based on his previous acquittal of the identical charge during the same transaction involving the same victims.” Relying upon the United States Supreme Court’s decision in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), Clayton contended he could not be tried for the robbery of Brenda Myrick, because, he argued, “the single rationally conceivable issue in dispute” in case no. CC-02-876 was his identity as the perpetrator of the robbery of Dickey and Brenda Myrick and the jury in that case had acquitted him.
The trial court held a hearing on Clayton’s motion to dismiss the indictment. At *858 the hearing, the State argued that the identity of the perpetrator was not the only issue involved in the trial of case no. CC-02-876. Instead, the State argued, there was an issue as to whether the perpetrator had attempted to rob Dickey, from whom nothing was taken. According to the transcript of that hearing, the State argued, in pertinent part:
“Now, the issue that you have before you is [whether] the only issue this jury decided in [case no. CC-02-876] a couple [of] weeks ago, was that of the defendant’s participation and presence. And, Judge, you heard the evidence. I think there was a big issue as to whether or not Doyes Dickey was robbed. [N]othing was taken from him. [He] never asked him for anything. [Dickey] testified that [he] felt of his pocket.
“Naturally[J I asked the jury to find from the evidence that that was an attempted taking. But the jury isn’t bound by what I ask them to do. We don’t know what the jury is thinking. And at the time[,] the defense argued that, no, just because he patted his back pocket doesn’t mean he tried to take anything. So, the first issue [was] whether or not anything was attempted to be taken from Doyes Dickey. That’s one of the elements of robbery.
“The jury could have found nothing was attempted to be taken. ...
“And then[J finally, Judge, when the jury was deliberating^] they sent out a question. And that question was [whether the] case [was] against Doyes Dickey or Brenda Myrick. ... With that question[,] can you say that the jury had no issue as to whether or not Doyes Dickey was a victim in [the] case when they want[ed] to know if [the case was] against Doyes Dickey or Brenda Myrick.
“... The issue is is there an issue. Could there be an issue that [the] jury decided [the] case on other than the defendant’s participation and presence in this crime.”
(Emphasis added.)
The trial court, without explanation, denied Clayton’s motion to dismiss the indictment. As previously mentioned, Clayton petitions this Court for an order directing the trial court to grant his motion to dismiss. However, it is clear that Clayton is not entitled to that relief.
“[T]he appellate courts of this State will review double jeopardy claims properly presented by petitions for the writ of mandamus.” Ex parte Ziglar, 669 So.2d 133, 135 (Ala.1995). “ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).” Ex parte Scott Bridge Co., 834 So.2d 79, 80-81 (Ala.2002).
In his petition for the writ of mandamus, Clayton relies, as he did in his motion to dismiss the indictment, upon the legal principles expressed in Ashe and argues that his alleged “identity ... as the perpetrator of the robbery/attempted robbery of Dickey and Myrick ... was the single rationally conceivable issue in dispute” in the trial of case no. CC-02-876. However, while Clayton correctly states the principles expressed in Ashe, he would have us overlook another factual issue presented by the evidence in the earlier trial, that is, whether the perpetrator attempted to take any of Dickey’s property.
In Ashe, the Supreme Court described the facts underlying the charges against Ashe:
*859 “Sometime in the early hours of the morning of January 10, 1960, six men were engaged in a poker game in the basement of the home of John Gladson at Lee’s Summit, Missouri. Suddenly three or four masked men, armed with a shotgun and pistols, broke into the basement and robbed each of the poker players of money and various articles of personal property. The robbers — and it has never been clear whether there were three or four of them — then fled in a car belonging to one of the victims of the robbery. Shortly thereafter the stolen car was discovered in a field, and later that morning three men were arrested by a state trooper while they were walking on a highway not far from where the abandoned car had been found. [Ashe] was arrested by another officer some distance away.”
397 U.S. at 437, 90 S.Ct. 1189.
Ashe was “subsequently charged with seven separate offenses — the armed robbery of each of the six poker players and the theft of the car.” 397 U.S. at 438, 90 S.Ct. 1189. Ashe was tried on the charge of robbing one of the poker players. According to the Supreme Court, “[t]he proof that an armed robbery had occurred and that personal property had been taken from [the poker player] as well as from each of the others was unassailable.” Id. However, “the State’s evidence that [Ashe] had been one of the robbers was weak.” Id. “The cross-examination of [the State’s] witnesses ... was aimed primarily at exposing the weakness of their identification testimony. Defense counsel made no attempt to question their testimony regarding the holdup itself or their claims as to their losses.” Id. “The jury — though not instructed to elaborate upon its verdict— found [Ashe] ‘not guilty due to insufficient evidence.’ ” 397 U.S. at 439, 90 S.Ct. 1189.
After the acquittal, Ashe was brought to trial again for the robbery of another participant in the poker game. Ultimately, before the United States Supreme Court, the issue was whether the State of Missouri violated the Fifth Amendment guarantee against double jeopardy when it prosecuted Ashe a second time for armed robbery. That court held that the doctrine of collateral estoppel “is embodied in the Fifth Amendment guarantee against double jeopardy.” 397 U.S. at 445, 90 S.Ct. 1189. Also, the Supreme Court defined the doctrine and described its application in criminal cases:
“ ‘Collateral estoppel’ is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. ...
“The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to ‘examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.’ ”
Id. at 443-44, 90 S.Ct. 1189 (footnote omitted). Applying those principles to Ashe’s case, the Supreme Court stated:
“Straightforward application of the federal rule to the present case can lead *860 to but one conclusion. For the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that [the poker player] had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether [Ashe] had been one of the robbers. And the jury by its verdict found that he had not. The federal rule of law, therefore, would make a second prosecution for the robbery of [another poker player] wholly impermissible.”
Id. at 445, 90 S.Ct. 1189. While the principles expressed in Ashe are binding upon this Court, the factual differences between Ashe and this case compel the conclusion that Clayton has not shown that he has a clear legal right to an order directing the trial court to dismiss the indictment charging him with the robbery of Brenda Myr-ick.
In Ashe, it was undisputed that the robbers, whoever they were, had taken money and personal property from each of their victims. Here, on the other hand, it is undisputed that the perpetrator took nothing from Doyes Dickey. Indeed, as defense counsel argued to the jury, whether the perpetrator had even attempted to take anything from Dickey was. an issue for the jury’s decision.
Marlin Myrick testified that he had no knowledge concerning the events that transpired on the passenger side of his vehicle while he was being robbed of his wallet by another assailant. Thus, Marlin provided no testimony tending to prove that the perpetrator had attempted to take any property from Dickey.
Brenda Myrick testified that she got out of the vehicle before Dickey did. According to Brenda, “[w]hen [she] got out of the car and turned around [the perpetrator] was right there at [her] with the gun.” Also, she testified that the perpetrator, who. “stayed in front of [her] the whole time,” told her to “[g]ive me everything you have got.” Because “the gun was pointed at [her],” Brenda gave the perpetrator her purse, and he “started backing down the driveway.” Brenda’s testimony provided a basis upon which a rational jury could have concluded that the perpetrator made no attempt to steal any property from Dickey, and, therefore, was not guilty of attempting to rob him.
In his response to the State’s answer to his petition, Clayton argues that “[t]he trial testimony of Dickey clearly demonstrates that someone attempted to rob Dickey by not only telling him to give up everything he had while pointing a gun at him, but patting him down for his wallet.” However, our review of Dickey’s testimony reveals that it did not “clearly demonstrate[]” that the perpetrator attempted to rob him.
Dickey confirmed that Brenda Myrick got out of the vehicle before he did. He testified that he then “felt something touch [him] on [his] left hip.” However, the perpetrator never asked Dickey for his wallet or his money, which he was carrying in a front pocket. According to Dickey, after demanding Brenda’s purse, the perpetrator “grab[bed] her purse out of her hand, and move[d] back down the hill.” While Dickey testified that the perpetrator said, “Give me all you got,” his testimony is unclear concerning when the remark was made, as well as to whom the remark was directed. While the State argued in response to Clayton’s motion for a judgment of acquittal that “looking at the evidence in the light most favorable to the State, patting the pockets is an attempt to take the property of Mr. Dickey,” it is clear that the jury was not bound to reach that conclusion.
*861 The jury could rationally have found that Dickey was not a victim of a robbery during the incident upon which the indictment in case no. CC-02-876 was based. Unlike the situation in Ashe, there was a “rationally conceivable issue in dispute before the jury” other than whether the accused had been the robber. Therefore, the prosecution of Clayton for the robbery of Brenda Myrick is permissible, and Clayton’s petition for a writ of mandamus must be denied.
PETITION DENIED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.