25 So.3d 449 (2009)
Ex parte GREENETRACK, INC.
(In re Joe Estano v. Greenetrack, Inc., et al.).
1061768.
Supreme Court of Alabama.
June 12, 2009.
*450 John M. Bolton III, Patrick L.W. Sefton, and Charlanna W. Spencer of Sasser, Bolton & Sefton, P.C., Montgomery; J. Mason Davis, Charles R. Driggars, J. Rushton McClees, and R. Ryan Daugherty of Sirote & Permutt, P.C., Birmingham; and John Owens of Owens & Millsap, LLP, Tuscaloosa, for petitioner.
Wilson F. Green and James E. Fleenor, Jr., of Battle, Fleenor, Green, Winn & Clemmer, LLP, Tuscaloosa; and Clatus C. Junkin and Samuel W. Junkin of Junkin Pearson Harrison & Junkin, LLC, Tuscaloosa, for respondent.
Doy Leale McCall III of Hill, Hill, Carter, Franco, Cole & Black, P.C., Montgomery; and R. Bruce Barze, Jr., of Balch & Bingham LLP, Birmingham, for amicus curiae Alabama Defense Lawyers Association, in support of the petitioner.
Matthew C. McDonald and Kirkland E. Reid of Miller, Hamilton, Snider & Odom, LLC, Mobile, for amicus curiae Business Council of Alabama, in support of the petitioner.
PARKER, Justice.
Greenetrack, Inc., petitions for a writ of mandamus directing the Pickens Circuit Court to vacate its order denying Greenetrack's motion to transfer to the Greene Circuit Court an action filed against it by Joe Estano. Estano seeks restitution for moneys he and a putative class of others allegedly lost at the Greenetrack gaming facility. We grant the petition and issue the writ.

Background
Greenetrack operates "both paper and electronic video bingo" at its facility in Greene County for "80 nonprofit organizations licensed by the Sheriff of Greene *451 County." Amendment No. 743, Ala. Const. 1901 (Local Amendments, Greene County, § 1 (Off.Recomp.)), authorizes nonprofit organizations to operate "bingo games for prizes or money" in Greene County. Estano filed a complaint in December 2006, alleging that the gaming operation at the Greenetrack facility is illegal because, he argues, it exceeds the authority granted by the local amendment. Section 8-1-150, Ala.Code 1975, provides that a person may recover losses incurred as the result of an illegal gambling operation. Estano filed the complaint in his county of residence, Pickens County. The complaint stated that venue is proper in Pickens County because Greenetrack, the defendant, does business there and because Estano, the plaintiff, resides there.
On February 9, 2007, Greenetrack filed a motion to dismiss Estano's complaint pursuant to Rules 12(b)(3) and 12(b)(6), Ala. R. Civ. P. Alternatively, Greenetrack moved the trial court to transfer the case to Greene County pursuant to § 6-3-7, Ala.Code 1975, which governs venue as to corporations, or under the doctrine of forum non conveniens, § 6-3-21.1, Ala.Code 1975. The trial court denied Greenetrack's motion. Greenetrack has petitioned for a writ of mandamus alleging that the trial court exceeded its discretion by refusing the transfer of the case to Greene County.[1]

Analysis
"`The proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for the writ of mandamus.' Ex parte Alabama Great Southern R.R., 788 So.2d 886, 888 (Ala.2000). `Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). Moreover, our review is limited to those facts that were before the trial court. Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala.1998).
"`The burden of proving improper venue is on the party raising the issue and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge.' Ex parte Finance America Corp., 507 So.2d 458, 460 (Ala.1987). In addition, this Court is bound by the record, and it cannot consider a statement or evidence in a party's brief that was not before the trial court. Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala.1995)."
Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala.2002).
In its motion for a change of venue, Greenetrack argued that venue in Pickens County was not proper, and it asked the trial court to transfer the action to Greene County pursuant to § 6-3-7, Ala.Code 1975, or, in the alternative, under § 6-3-21.1, Ala.Code 1975, the forum non conveniens statute, for the convenience of the parties. Because the writ will issue on the authority of § 6-3-7, we need not reach the issue whether Greene County is a more convenient forum under § 6-3-21.1, Ala.Code 1975.
*452 Section 6-3-7(a), Ala.Code 1975, provides, in part, that "[a]ll civil actions against corporations may be brought . . . (3)[i]n the county in which the plaintiff resided . . . at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiff's residence. . . ." The crux of the issue presented by Greenetrack's petition is whether Greenetrack "does business by agent" in Pickens County, the county of Estano's residence. Greenetrack argued in its motion for a change of venue that all Greenetrack's business functions occur at its facility, which is located in Greene County; that its principal place of business and its offices are located exclusively in Greene County; and that it has not purchased any newspaper, radio, or billboard advertisements in Pickens County.
Estano argued in his opposition to Greenetrack's motion for a change of venue that because Greenetrack operated a bus that ran on a regular schedule from its facility in Greene County to Columbus, Mississippi, with scheduled stops in Pickens County at Aliceville and Reform,[2] Greenetrack did business by agent in Pickens County. The bus provided free transportation to and from Greenetrack.[3] Estano also argued that Greenetrack targets business from Pickens County through "advertisements over television, radio, billboards and other mass media." In a footnote to his opposition to Greenetrack's motion, Estano indicated that Greenetrack also had 10 employees who reside in Pickens County who presumably travel to and from Greene County daily.
To support his argument, made in opposition to Greenetrack's motion, that the operation of the bus service between Greene County, Alabama, and Columbus, Mississippi, with stops in Pickens County, constituted conducting business by agent in Pickens County, Estano first defined the terminology by quoting from Ex parte Pike Fabrication, 859 So.2d at 1093: "`"[A] corporation `does business' in a county for the purposes of § 6-3-7 if, with some regularity, it performs there some of the business functions for which it was created."'" (Quoting Ex parte Wiginton, 743 So.2d 1071, 1074-75 (Ala.1999), quoting in turn Ex parte SouthTrust Bank of Tuscaloosa, N.A., 619 So.2d 1356, 1358 (Ala. 1993).) In his opposition to Greenetrack's motion, Estano then argued:
"The Alabama Supreme Court has repeatedly held that a corporation does business by agent in a County when it performs business functions which relate to its core business. For example, in Ex parte Scott Bridge Co., 834 So.2d 79, 81-82 (Ala.2002), a former employee living in Chambers County filed a retaliatory discharge action in Chambers County against his employer, Scott Bridge, a bridge-building company in Lee County. Scott Bridge moved to dismiss or transfer, *453 claiming that venue was improper under Section 6-3-7(a)(3) because it was not doing business in Chambers County, in that it had never constructed a bridge there. The evidence however showed that Scott Bridge had bought some supplies for bridge-building from vendors in Chambers County. The Supreme Court held that Scott Bridges's purchase of supplies in Chambers County rendered it to be doing business there.
"Also instructive is Ex parte Perfection Siding, Inc., 882 So.2d 307 (Ala. 2003). In that case, Plaintiff (an employee of a siding contractor) sued the subcontractor and general contractor in Hale County, seeking damages resulting from a fall from a roof occurring at a jobsite in Tuscaloosa County. Defendants sought dismissal or transfer, claiming that venue was improper because the subcontractor (Perfection Siding) was not doing business in Hale County. Particularly, Perfection Siding claimed that it had only performed two (2) jobs in Hale County in the year prior to the lawsuit, a minuscule fraction of its approximately 1,000 total jobs performed that year. The Supreme Court held that Perfection Siding was doing business in Hale County because its `physical presence [and] performance of services within the county.' Perfection Siding, 882 So.2d at 311."
In determining whether venue in Pickens County is proper in this case, we must look to whether Greenetrack was, in Pickens County, "perform[ing] some of the business functions for which it was created," Ex parte Pike Fabrication, 859 So.2d at 1093, as Estano argued in his opposition to Greenetrack's motion for a change of venue. When Greenetrack made its prima facie case that it did not do business in Pickens County, the burden then shifted to Estano to prove that Greenetrack did, in fact, conduct in Pickens County the business for which it was created.
Estano cited Ex parte Scott Bridge Co., 834 So.2d 79 (Ala.2002), for the holding that Scott Bridge was doing business in Chambers County even though it had not built a bridge there but had merely purchased some supplies there. Estano argued that this activity by Scott Bridge is analogous to Greenetrack's running a bus service to pick up potential customers in Pickens County and transport them to Greene County. But this Court in Scott Bridge reasoned:
"`A corporation "does business" in a county for purposes of § 6-3-7 if, with some regularity, it performs there some of the business functions for which it was created. Ex parte Real Estate Financing, Inc., 450 So.2d 461 (Ala.1984); Ex parte Southtrust Bank of Tuskegee, 469 So.2d 103 (Ala.1985).' Ex parte SouthTrust Bank of Tuscaloosa County, N.A., 619 So.2d 1356, 1358 (Ala.1993). This Court has made the following distinction between those corporate business functions for which a corporation was created and the exercise of corporate powers incidental to those corporate business functions:
"`It should be noted that not every act done within the corporate powers of a foreign corporation will constitute doing business within the meaning of the statute. We recognized in International Cotton-Seed Oil Co. [v. Wheelock], 124 Ala. [367,] at 370-371, 27 So. [517,] at 518 [(1899)], that in applying the test for doing business "it may not always be easy to distinguish between acts done in the exercise of corporate functions and those done merely within corporate powers."'
"Ex parte Charter Retreat Hosp., Inc., 538 So.2d 787, 790 (Ala.1989).

*454 ". . . .
"While this Court has not been provided with as detailed a description of Scott Bridge's interactions with its parts supplier in Chambers County as the Court of Civil Appeals was provided with of GTE's relationship with its parts supplier in Ex parte GTE Automatic Electric, Inc., [448 So.2d 385, 387 (Ala. Civ.App.1984),] the information that this Court does have regarding Scott Bridge's interactions with its supplier in Chambers County is that Scott Bridge `purchased handrail pipe, handrail posts, protection anchors, supports, and shoes which are used in Scott Bridge's business [of bridge building].' (Trial court's order denying the motion for a change of venue.) Scott Bridge could presumably have purchased these materials elsewhere, and thus fulfilled its corporate purpose entirely outside of Chambers County, but spending more than $50,000 per year in Chambers County on materials necessary to bridge construction is sufficient to constitute `doing business' in Chambers County.
"Scott Bridge's purchases of bridge parts from suppliers in Chambers County can be distinguished from other, more tangential relationships that this Court has deemed insufficient to constitute `doing business.' Specifically, this Court held in Ex parte Parsons & Whittemore Alabama Pine Construction Corp., 658 So.2d 414 (Ala.1995), and in Ex parte Real Estate Financing, Inc., 450 So.2d 461 (Ala.1984), that retaining the services of an attorney in the forum county on a case-by-case basis did not constitute `doing business' in that county, where the businesses of the companies were construction and real estate financing, respectively. Hiring an attorney was tangential to the companies' fulfillment of their primary business functions. Scott Bridge's primary business function of building bridges, however, immediately and directly depends upon the transactions it has with its Chambers County suppliers."
Ex parte Scott Bridge Co., 834 So.2d at 81-82. Greenetrack's providing bus service to solicit potential customers is not analogous to the purchase of over $50,000 per year of parts used in a corporation's primary business. Greenetrack's principal business, the business for which it was created and authorized, is to run the Greenetrack gaming facility in Greene County, providing gaming services to patrons who come to the facility. Greenetrack's providing a bus route through Pickens County was "the exercise of corporate powers incidental to [its] corporate business functions"; it was "tangential to the compan[y]'s fulfillment of [its] primary business functions." 834 So.2d at 81-82.
Less convincing than his reliance on Scott Bridge is Estano's reliance on Ex parte Perfection Siding, Inc., 882 So.2d 307 (Ala.2003). In that case, venue for an action involving a company formed to install siding was found to be proper in a county in which the company had installed siding on two occasions within the prior year. To be analogous, Greenetrack would have had to have conducted a gaming operation within Pickens County on two occasions within the year before Estano's action was filed.
Based on the foregoing, we hold that Greenetrack was not "doing business" in Pickens County; consequently, Pickens County was not a proper venue for Estano's action. Because a case may be transferred for reasons of forum non conveniens only if it was initially filed in a proper venue, we do not reach that aspect of the petition.
Because Greenetrack was not "doing business" in Pickens County, § 6-3-7(c) *455 requires that the action be transferred to Greene County, the county in which Greenetrack does do business.

Conclusion
Greenetrack has demonstrated a clear legal right to the transfer and a clear error on the part of the trial court in refusing the transfer. We, therefore, grant the petition and issue the writ. The trial court is directed to vacate its order denying Greenetrack's motion for a change of venue and to enter an order transferring the action to Greene County.
PETITION GRANTED; WRIT ISSUED.
WOODALL and BOLIN, JJ., concur.
STUART, SMITH, and SHAW, JJ., concur specially.
COBB, C.J., and LYONS and MURDOCK, JJ., dissent.
STUART, Justice (concurring specially).
I concur fully in the determination that Greenetrack, Inc., was not doing business by agent in Pickens County so as to make venue in that county proper. I dissented from this Court's decision in Ex parte Scott Bridge Co., 834 So.2d 79 (Ala.2002), and I continue to maintain that that case was erroneously decided. By purchasing more than $50,000 in construction materials in Chambers County, Scott Bridge Company was not doing business by agent in Chambers County. Likewise, by operating a bus that picked up potential patrons in Pickens County and transported them to Greenetrack's gaming facility in Greene County, Greenetrack was not doing business by agent in Pickens County. Such activities are tangential to the business of each of those corporations.
SHAW, Justice (concurring specially).
I concur in the main opinion. I write separately only to emphasize that, to me, the dispositive issue in this case is whether the transporting of a handful of patrons by Greenetrack, Inc., from Pickens County to Greenetrack's facility in Greene County was necessary in order to fulfill Greenetrack's principal corporate function, or, instead, whether it constituted the exercise of a corporate power incidental to its principal corporate function.
Greenetrack operates a gaming facility that, by law, must be operated exclusively in Greene County. In the period between May 2005 and February 2007, Greenetrack sent a bus or a van to various locations surrounding Greene County to pick up and transport patrons to its gaming facility. This service was free, and the riders were not obligated to patronize the Greenetrack facility. According to the materials before this Court, the bus or van had regularly scheduled stops in two communities in Pickens County and, during the period the shuttle service was running, picked up between one and four patrons in that county.
Under Ala.Code 1975, § 6-3-7(a)(3), venue for this action is proper in Pickens County if, at the time of the accrual of the cause of action, Greenetrack did business by agent in Pickens County. As the main opinion notes, whether relief is due to be granted based on this petition hinges on the meaning of the phrase "does business by agent." In applying this phrase, the courts of this State have looked to whether the corporation performed in the county in question, with some regularity, some of the business functions for which it was created. Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1093 (Ala.2002). A distinction has consistently been made between those business functions for which a corporation was created and the exercise of corporate powers that are incidental to those business *456 functions. Ex parte Scott Bridge Co., 834 So.2d 79, 81 (Ala.2002). Not every act performed within the corporate powers of a corporation constitutes "doing business." Id.
In Scott Bridge, this Court analyzed whether Scott Bridge Company, whose principal business was building bridges, was, for venue purposes, "doing business by agent" in Chambers County, where it purchased approximately $50,000 of supplies and equipment per year. 834 So.2d at 81. In holding that Scott Bridge was doing business in Chambers County, this Court took a broad view of what it meant to be "doing business," stating:
"Scott Bridge notes that it is in the business of constructing bridges and it argues that because it has not built a bridge in Chambers County, it has not `done business by agent' there. The business of Scott Bridge, however, should not be considered so narrowly. To fulfill its principal corporate function of building bridges, Scott Bridge must purchase parts, tools, and equipment with which to perform that principal corporate function. [The plaintiff] asserts, and Scott Bridge does not refute, that Scott Bridge buys from businesses located in Chambers County supplies that cost in excess of $50,000 a year."
834 So.2d at 81 (emphasis added). This Court further noted that Scott Bridge "could presumably have purchased these materials elsewhere, and thus fulfilled its corporate purpose entirely outside of Chambers County, but spending more than $50,000 per year in Chambers County on materials necessary to bridge construction is sufficient to constitute `doing business' in Chambers County," and that "Scott Bridge's primary business function of building bridges . . . immediately and directly depends upon the transactions it has with its Chambers County suppliers." 834 So.2d at 82 (emphasis added). As I read Scott Bridge, this Court essentially held that even though Scott Bridge had not performed in Chambers County, with some regularity, some of the business functions for which it was created (i.e., building bridges), venue was nonetheless proper in Chambers County because Scott Bridge was "doing business" there by engaging in an activity (i.e., the purchase of bridge-building supplies and equipment) that was absolutely essential to its ability to perform its principal corporate function (i.e., building bridges).[4]
In the present case, I see no indication that Greenetrack ever performed in Pickens County, with some regularity, some of the corporate functions for which it was created. Furthermore, application of the analysis in Scott Bridge does not, in my view, dictate that we hold here that venue in Pickens County is proper. Although it is correct that Greenetrack must have patrons come to its facility in Greene County in order for it to perform its principal corporate function of operating a gaming facility, I see nothing to suggest that Greenetrack must itself transport patrons to its facility in order to perform its principal corporate function. A company cannot build bridges without the supplies and equipment necessary for bridge construction. However, a company can operate a stationary gaming facility without providing transportation to the facility. It certainly cannot be said, given the negligible *457 number of persons transported to the Greenetrack facility from Pickens County (one to four), that Greenetrack must transport patrons from Pickens County in order to fulfill its principal corporate function. Although, as this Court noted in Scott Bridge, it may not always be easy to distinguish between acts done in the exercise of corporate functions and those done merely as an exercise of corporate powers incidental to those functions, I am satisfied that Greenetrack's activities in Pickens County were, at best, the exercise of a corporate power incidental to the performance of its principal corporate function  operating a gaming facility in Greene County. Therefore, I concur to grant the petition and issue the writ.
SMITH, J., concurs.
LYONS, Justice (dissenting).
I joined the majority opinion in Ex parte Scott Bridge Co., 834 So.2d 79 (Ala.2002), authored by Justice See, and I must respectfully dissent from the main opinion's strained attempt to distinguish it.
Section 6-3-7(a), Ala.Code 1975, provides in part that "[a]ll civil actions against corporations may be brought . . . (3)[i]n the county in which the plaintiff resided. . . at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiff's residence. . . ." (Emphasis added.) The defendant in Scott Bridge, a bridge-building company, never built a bridge in Chambers County, just as Greenetrack never conducted gaming operations in Pickens County. Nevertheless, we held, correctly I submit, that venue was proper in Chambers County in Scott Bridge where the defendant, acting through its agent, purchased materials in that county with which to build bridges in another county. On the same rationale, we should hold that venue is proper in Pickens County where Greenetrack sends its agent, operating a bus for the purpose of picking up customers and transporting them to its facility in Greene County. The absence of a gaming operation in Pickens County is analogous to the absence in Scott Bridge of any bridge construction in Chambers County.
The main opinion analogizes Greenetrack's activities in Pickens County to sporadic retention of an attorney on a case-by-case basis, a circumstance this Court has deemed tangential to a corporation's primary business function. See Ex parte Parsons & Whittemore Alabama Pine Constr. Corp., 658 So.2d 414 (Ala.1995); Ex parte Real Estate Fin., Inc., 450 So.2d 461 (Ala.1984). Fetching customers is hardly a tangential activity of a business that must turn a profit to keep its doors open. Nor can we point to the high dollar volume of activity in Chambers County in Scott Bridge as a basis on which to distinguish it without judicially rewriting § 6-3-7 to create a requirement of "doing substantial business by agent."
Justice Murdock in his dissenting opinion attempts to distinguish Scott Bridge. He states:
"In Ex parte Scott Bridge, 834 So.2d 79 (Ala.2002), the sale and purchase of supplies in Chambers County appears to me to have been activity by which the sellers of those supplies did their business. I question whether the fact that Scott Bridge was the purchaser in those transactions meant that it was `do[ing] business by agent in [Chambers County]' within the meaning of § 6-3-7(a)(3) intended by the legislature. In particular, I question whether Scott Bridge was doing its business by making the purchases it made."
25 So.3d at 458.
So, according to Justice Murdock's dissent, the sellers of supplies to the defendant *458 in Scott Bridge were doing "their" business while the defendant, an entity whose business is acquiring raw materials and making bridges out of those materials,[5] was somehow not doing its business by purchasing such materials through the acts of agents in Chambers County, and this Court should therefore have found venue in Chambers County defective. Suffice it to say that had this rationale been presented during this Court's consideration of Scott Bridge I would have rejected it and stayed with my vote to deny the petition for mandamus.
I would affirm the trial court's rejection of the challenge to venue under § 6-3-7 and address the secondary issue of availability of a transfer "for the convenience of parties and witnesses, or in the interest of justice," under § 6-3-21.1, Ala.Code 1975.
COBB, C.J., concurs.
MURDOCK, Justice (dissenting).
I respectfully dissent. Although I agree to an extent with Justice Lyons's reasoning as it relates to the facts of this case, my view of a situation like the one presented in Ex parte Scott Bridge Co., 834 So.2d 79 (Ala.2002), does not coincide with his view of that case. I therefore write separately in order to explain my position.
In Ex parte Scott Bridge Co., supra, the sale and purchase of supplies in Chambers County appear to me to have been activities by which the sellers of those supplies did their business. I question whether the fact that Scott Bridge was the purchaser in those transactions meant that it was "do[ing] business by agent in [Chambers County]" within the meaning of § 6-3-7(a)(3), Ala.Code 1975, intended by the legislature. Specifically, I question whether Scott Bridge was doing its business by making the purchases it made.
Meaningful authority exists for drawing the foregoing distinction. For example, in Frees v. Southern Michigan Cold Storage Co., 43 Mich.App. 756, 757, 204 N.W.2d 782, 783 (1972), the court explained: "[T]he defendant's business is that of storing fruits and vegetables. The farmers and processors bring their fruits and vegetables to defendant's warehouse in Hart, Oceana County for storage. Defendant's contacts with Muskegon County are limited to the purchasing of equipment and material for the maintenance of its refrigeration equipment," except for one customer that the court noted actually brought its produce to Oceana County for storage. (Emphasis added.) Under these facts, the court held that the defendant "was not doing business in Muskegon County by purchasing equipment and materials in Muskegon County to maintain its refrigeration equipment." 43 Mich.App. at 758, 204 N.W.2d at 783-84.[6]
Consequently, had I been a member of this Court when Scott Bridge was decided, *459 I might well have dissented from the holding that venue in that case was proper in Chambers County.[7]
In contrast, I believe Greenetrack, Inc., was doing its business when it sent its own employee and a bus into Pickens County on a regular basis to transport residents of Pickens County to Greenetrack's facility so they could serve as customers of its business. True, the plaintiff here utilized his own transportation to travel from his home in Pickens County to Greenetrack's facility in Greene County. Nonetheless, the purpose of the legislature in enacting the venue statute was to establish, as best it could, where, in all fairness, a corporate defendant should be expected to defend itself if its activities cause harm to another. I do not think that Greenetrack can protest that it is unexpected or unfair that it be held to account in Pickens County under a statute that sets venue in the county of the plaintiff's residence, provided the defendant regularly does business by agent there, for an injury it has caused to a Pickens County resident when it has purposefully and regularly engaged in activity by agent in Pickens County to bring Pickens County residents to its facility to be its customers.[8]
NOTES
[1] The petition does not address the trial court's denial of Greenetrack's motion to dismiss the complaint.
[2] Greenetrack discontinued the bus service to Columbus, Mississippi, including the stops in Aliceville and Reform, in February 2007 because the service was not being used.
[3] In response to Greenetrack's motion for a change of venue, Estano provided affidavits from four persons saying that they had ridden the Greenetrack bus from Pickens County to the Greenetrack facility sometime after December 2006. Greenetrack responded with affidavits showing that there had been no passenger pick-ups in Pickens County from November 2006 through February 2007 and that the bus route was discontinued in February 2007.

In his brief to this Court, Estano challenges the timeliness of the filing of Greenetrack's affidavits, Estano's brief, at 15 n. 5, but he made no objections to the affidavits in the trial court. "The failure to object to the admission of evidence results in a waiver on appeal of argument on that point." Ex parte Williamson, 907 So.2d 407, 416 (Ala.2004).
[4] I question the conclusion reached in Scott Bridge that a corporation's mere purchase of materials necessary to fulfill a principal corporate function actually equates, for purposes of § 6-3-7(a)(3), to the performance of the principal corporate function for which the corporation was created; however, this Court is not asked in the instant case to overrule Scott Bridge.
[5] See Scott Bridge, 834 So.2d at 81 ("To fulfill its principal corporate function of building bridges, Scott Bridge must purchase parts, tools, and equipment with which to perform that principal corporate function.").
[6] In Hartung v. Central Illinois Public Service Co., 110 Ill.App.3d 816, 66 Ill.Dec. 493, 443 N.E.2d 16 (1982), the court reasoned:

"The evidence further revealed that defendant consummated commercial transactions with 10 different Madison County residents which totaled nearly $4.4 million in 1979[, including purchases of approximately $1 million of parts and supplies from numerous vendors]. . . .
"Plaintiff maintained that these commercial transactions contributed directly to defendant's production and marketing of its principal consumer product, electricity. Plaintiff further contends that these transactions were done systematically and continuously thus establishing that defendant was `doing business' within Madison County within the meaning of the venue statute.
". . . .
"`. . . [I]n order to establish that a defendant is doing business within a county for purposes of venue, quantitatively more business activity within the county must be demonstrated than where the question is whether the defendant has transacted any business within the State for purposes of service of process pursuant to section 17. The defendant must, in short, be conducting its usual and customary business within the county in which venue is sought.' [Baltimore & Ohio R.R. v. Mosele,] 67 Ill.2d 321, 329-330[, 10 Ill.Dec. 602, 606], 368 N.E.2d 88, 92 [(1977)].
". . . [W]e believe the evidence does not support the trial court's finding of venue in Madison County in the present case. Defendant's business is the production and marketing of electricity which is not carried on by defendant in Madison County."
110 Ill.App.3d at 818-20, 66 Ill.Dec. at 495-96, 443 N.E.2d at 17-19 (emphasis added). Similarly, in Gardner v. International Harvester Co., 113 Ill.2d 535, 541, 101 Ill.Dec. 842, 845, 499 N.E.2d 430, 433 (1986), the Illinois Supreme Court rejected an argument that purchases of materials by a manufacturer constituted doing business for venue purposes: "Nor do we believe that Harvester's purchases from St. Clair County suppliers show that the company is engaged in business there. Harvester buys the materials for use in its business of designing, manufacturing, and marketing tractors, trucks, and other machines, and the purchases are but a necessary incident of that." See also Saturn Sys., Inc. v. Saturn Corp., 659 F.Supp. 865 (D.Minn. 1987); Westinghouse Electric Corp. v. Superior Court, 17 Cal.3d 259, 270, 551 P.2d 847, 855, 131 Cal.Rptr. 231, 239 (1976) (also noting that "[t]he change of venue issue is directed at completely different policy considerations" and that "[i]t is inappropriate to apply a `minimum contacts' test to determine whether defendants are doing business" in a given county for venue purposes).
[7] This is not to say that, where activity of the nature at issue in Scott Bridge actually gives rise to the claim asserted, venue in the county of that activity would not be appropriate. See § 6-3-7(a)(1), Ala.Code 1975. That was not the case in Scott Bridge, however.
[8] Certainly, however, if Scott Bridge reflects the law in Alabama, the present case involves activity that, in my view, is no less the doing of business for which the defendant was created than was the activity in Scott Bridge.