BRYAN, Justice.
Nautilus Insurance Company ("Nautilus") and Lyon Fry Cadden Insurance Agency, Inc. ("LFC"), separately petition this Court for writs of mandamus directing the Baldwin Circuit Court ("the trial court") to vacate its orders denying their motions to dismiss the action filed against them by Precision Sand Products, LLC ("Precision"). For the reasons set forth herein, we grant Nautilus's petition and deny LFC's petition.
Facts and Procedural History
During the period from June 10, 2015, to June 10, 2016, Precision had in place a commercial general-liability insurance policy ("the policy") it had purchased from Nautilus through LFC, an insurance broker. In March 2016, Terry Williams sued Precision in the trial court, seeking recovery for injuries he allegedly suffered on Precision's property during the period the policy was in effect.[1] Williams later amended his complaint to add his wife, Zandra Williams, as a plaintiff. Pursuant to the terms of the policy, Precision demanded that Nautilus defend and indemnify it against the Williamses' claims. Nautilus agreed, under reservation of rights, to defend Precision against the Williamses' claims and is currently doing so.
On July 3, 2017, Nautilus filed a declaratory-judgment action against Precision and the Williamses in the United States District Court for the Southern District of Alabama ("the district court"), seeking a judgment declaring that, pursuant to an exclusion in the policy, Nautilus was not obligated to defend and indemnify Precision *826 against the Williamses' claims ("the federal action"). Precision filed a motion to dismiss or, alternatively, to stay the federal action, asking the district court to refuse to exercise its discretionary jurisdiction. See Wilton v. Seven Falls Co., 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (noting that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, [ 28 U.S.C. § 2201(a),] even when the suit otherwise satisfies subject matter jurisdictional prerequisites"). As of the filing of these petitions, the district court has not yet ruled on that motion, and the federal action remains pending.
On October 13, 2017, Precision filed in the Williamses' action in the trial court a "crossclaim complaint" against Nautilus and LFC ("the state action").[2] In its complaint, Precision asserted the following claims against both Nautilus and LFC: (1) a claim seeking a judgment declaring that Nautilus and LFC are obligated to defend and indemnify Precision against the Williamses' claims; (2) an abnormal bad-faith claim; (3) a bad-faith-failure-to-settle claim; (4) a breach-of-the-enhanced-duty-of-good-faith claim; (5) a fraud claim, alleging that Nautilus and LFC misrepresented to Precision that the policy provided coverage for claims such as the Williamses'; and (6) a negligence claim, alleging that Nautilus and LFC "had a duty to sell an insurance policy to Precision ... that provides coverage for its business operations and for any potential claims [to which it] might be exposed ...."
Nautilus filed a motion to dismiss the claims against it in the state action, arguing that Precision's claims against it were compulsory counterclaims that Precision was required to file in the federal action pursuant to § 6-5-440, Ala. Code 1975, the abatement statute. LFC, arguing that Precision's complaint failed to state a claim against LFC upon which relief could be granted, filed a motion to dismiss the claims against it in the state action pursuant to Rule 12(b)(6), Ala. R. Civ. P. Alternatively, LFC argued that, if the trial court dismissed Nautilus from the state action, then LFC was also entitled to a dismissal under Rule 19, Ala. R. Civ. P., which provides for the joinder of persons needed for just adjudication, because, according to LFC, Nautilus is an indispensable party to Precision's claims against LFC.
On November 15, 2017, the trial court, without specifying its reasons, entered separate orders denying Nautilus's and LFC's motions to dismiss, and Nautilus and LFC separately petitioned this Court for writs of mandamus directing the trial court to vacate those orders. Nautilus's petition was assigned case no. 1170170; LFC's petition was assigned case no. 1170235. We consolidated the two petitions for the purpose of writing a single opinion, but because the petitions assert different grounds for issuing the writs, we address the petitions separately.
Standard of Review
"The standard of review applied to a petition seeking the issuance of a writ of mandamus is well settled:
" 'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in *827 the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' "
Ex parte Caremark Rx, LLC, 229 So.3d 751, 756 (Ala. 2017) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995) ).
Case no. 1170170 (Nautilus)
In its petition to this Court, Nautilus makes the same argument it made in its motion to dismiss the state action, i.e., that it is entitled to a dismissal from the state action under § 6-5-440 because, Nautilus says, Precision's claims against it are compulsory counterclaims in the federal action, which was pending when Precision commenced the state action. "Mandamus is the appropriate remedy to correct a trial court's failure to properly apply § 6-5-440." Ex parte J.E. Estes Wood Co., 42 So.3d 104, 108 (Ala. 2010). "When the facts underlying a motion filed pursuant to § 6-5-440 are undisputed, as is the case here, our review of the application of the law to the facts is de novo." Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So.2d 967, 969 (Ala. 2007).
Section 6-5-440 provides:
"No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times."
Regarding the operation of § 6-5-440, this Court has stated:
"This Code section, by its plain language, forbids a party from prosecuting two actions for the 'same cause' and against the 'same party.' This Court has previously held that an action pending in a federal court falls within the coverage of this Code section:
" ' "The phrase 'courts of this state,' as used in § 6-5-440, includes all federal courts located in Alabama. This Court has consistently refused to allow a person to prosecute an action in a state court while another action on the same cause and against the same parties is pending in a federal court in this State." '
" Ex parte University of South Alabama Found., 788 So.2d 161, 164 (Ala. 2000) (quoting Weaver v. Hood, 577 So.2d 440, 442 (Ala. 1991) (citations in Weaver omitted in University of South Alabama ) ). Additionally, a compulsory counterclaim is considered an 'action' for purposes of § 6-5-440. Penick v. Cado Sys. of Cent. Alabama, Inc., 628 So.2d 598, 599 (Ala. 1993). As this Court has noted:
" 'This Court has held that the obligation ... to assert compulsory counterclaims, when read in conjunction with § 6-5-440, Ala. Code 1975, which prohibits a party from prosecuting two actions for the same cause and against the same party, is tantamount to making the defendant with a compulsory counterclaim in the first action a "plaintiff" in that action (for purposes of § 6-5-440 ) as of the time of its commencement. See, e.g., Ex parte Parsons & Whittemore Alabama Pine Constr. Corp., 658 So.2d 414 (Ala. 1995) ; Penick v. Cado Systems of Cent. Alabama, Inc., 628 So.2d 598 (Ala. 1993) ; Ex parte Canal Ins. Co., 534 So.2d 582 (Ala. 1988). Thus, the defendant subject to the counterclaim rule who commences another action has violated the prohibition in § 6-5-440 against maintaining two actions for the same cause.'
*828 " Ex parte Breman Lake View Resort, L.P., 729 So.2d 849, 851 (Ala. 1999). See also University of South Alabama Found., 788 So.2d at 165 (holding that a party in an action pending in a federal court was subject to the counterclaim rule and thus violated § 6-5-440 by commencing another action in a state court); Ex parte Parsons & Whittemore Alabama Pine Constr. Corp., 658 So.2d 414 (Ala. 1995) (holding that the prosecution in a subsequent action of claims that had been compulsory counterclaims in a previously filed declaratory-judgment action violated § 6-5-440 )."
Ex parte Norfolk S. Ry., 992 So.2d 1286, 1289-90 (Ala. 2008).
In this case, Precision is a defendant and Nautilus a plaintiff in the federal action, which undisputedly had been filed and was pending when Precision commenced the state action. Thus, as we explained in Norfolk, if Precision's claims against Nautilus in the state action are compulsory counterclaims in the federal action, then Precision is a "plaintiff" in the federal action for purposes of § 6-5-440 and, as such, is precluded under that statute from asserting those claims in a later-filed action, i.e., the state action. See Ex parte Brooks Ins. Agency, 125 So.3d 706, 710 (Ala. 2013) (holding that § 6-5-440 mandated the dismissal of an insured's claims filed in a state-court action because those claims were compulsory counterclaims in the insurer's first-filed, declaratory-judgment action in federal court); and Ex parte Canal Ins. Co., 534 So.2d 582 (Ala. 1988) (same). However, before addressing whether Precision's claims against Nautilus are compulsory counterclaims in the federal action, we must first address Precision's argument that § 6-5-440 is not applicable in this case, despite the fact that Nautilus filed the federal action before Precision filed the state action and regardless of whether Precision's claims are compulsory counterclaims in the federal action. In support of its argument, Precision cites Metropolitan, supra.
In Metropolitan, Fred D. Gray filed a claim under a homeowner's insurance policy he had with Metropolitan Property and Casualty Insurance Company ("Metropolitan"). Metropolitan subsequently filed a declaratory-judgment action in the United States District Court for the Middle District of Alabama, seeking a declaration that Gray's loss was not covered by his policy. However, the federal court entered an order stating that the allegations in Metropolitan's complaint were insufficient to invoke that court's jurisdiction under 28 U.S.C. § 1332, the diversity statute. Although the federal court gave Metropolitan leave to amend its complaint to correct that deficiency, Gray filed an action against Metropolitan in the Macon Circuit Court before Metropolitan filed its amended complaint. Metropolitan moved the state court to dismiss Gray's action on the ground that Gray's claims were compulsory counterclaims in Metropolitan's federal-court action. The state court denied Metropolitan's motion, and Metropolitan petitioned this Court for a writ of mandamus, arguing that Gray was barred under § 6-5-440 from bringing his claims in the state-court action. In denying Metropolitan's petition, this Court stated:
"We agree with Gray that a determination that the federal-court action was pending at the time of the commencement of the state-court action is essential to the reliance by the insurer ... on [ § 6-5-440 ]. The federal court's finding that the allegations of Metropolitan's original complaint were 'insufficient to invoke this court's jurisdiction under 28 U.S.C. 1332 ' calls into question the existence of the essential prerequisite of priority of the federal-court action."
Metropolitan, 974 So.2d at 971.
This Court noted that Metropolitan had not argued that its amended complaint *829 related back to the filing of its original complaint, and the Court therefore did not address that issue. Rather, in the absence of such argument, the Court merely held that it was questionable whether the federal-court action had priority and that, as a result, Metropolitan had failed to carry its burden of demonstrating that it had a clear legal right to dismissal from the state-court action under § 6-5-440.
Precision contends that, under Metropolitan, when there is a question as to the court's jurisdiction in a first-filed action, § 6-5-440 does not mandate the dismissal of a later-filed action asserting claims that would be compulsory counterclaims in the first-filed action. Given that premise, Precision points to the fact that, in this case, the district court has yet to rule on Precision's motion to dismiss or to stay the federal action. Thus, Precision argues, the district court might ultimately choose not to exercise its discretionary jurisdiction over the federal action, and, therefore, "there is a question as to the jurisdiction" of the district court, just as, Precision says, there was in Metropolitan. Precision's response to Nautilus's petition, at 10.
However, Metropolitan is distinguishable from this case. In Metropolitan, there was not, as Precision contends, a question as to the jurisdiction of the federal court; Metropolitan clearly indicates that Metropolitan's amended complaint invoked that court's jurisdiction. Metropolitan, 974 So.2d at 971. Rather, because Metropolitan's original complaint failed to invoke the federal court's jurisdiction, and because Gray filed the state-court action before Metropolitan corrected that deficiency, there was a question as to which action had priority. In this case, it is undisputed that the allegations in Nautilus's complaint in the federal action, which Nautilus filed before Precision filed the state action, were sufficient to invoke the district court's diversity jurisdiction,[3] and nothing in the materials before this Court indicates that the district court elected not to exercise its discretionary jurisdiction over the federal action. As a result, there is no question, as there was in Metropolitan, that the federal action has priority over the state action. Precision's speculation that the district court might decide at some future moment not to exercise its discretionary jurisdiction over the federal action does not call into question the priority of the federal action. The circumstances here are not analogous to the circumstances in Metropolitan, where the substance of Metropolitan's original complaint and the timing of the parties' filings raised an actual, existing question as to whether Metropolitan's federal-court action had priority over Gray's state-court action. Thus, Metropolitan provides no support for Precision's argument. Accordingly, as noted earlier, because the federal action has priority over the state action, § 6-5-440 mandates the dismissal of Precision's claims against Nautilus in the state action if those claims are compulsory counterclaims in the federal action.
Nautilus argues that Precision's claims against it are compulsory counterclaims in the federal action because, Nautilus says, both its claims in the federal action and Precision's claims in the state action
"arise out of Nautilus's issuance of the [p]olicy to Precision, Precision's demand that Nautilus defend and indemnify Precision *830 against the Williamses' claims, and Nautilus's provision of a defense under reservation of rights. Hence, the claims arise out of the same transaction or occurrence and are based on the same operative facts."
Petition, at 15-16. We agree with Nautilus.
In determining whether a counterclaim is compulsory, this Court applies the logical-relationship test.
" 'A counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim.' Committee Comments on 1973 adoption of Rule 13, [Ala. R. Civ. P.,] ¶ 6. Under the logical-relationship standard, a counterclaim is compulsory if '(1) its trial in the original action would avoid a substantial duplication of effort or (2) the original claim and the counterclaim arose out of the same aggregate core of operative facts.' Ex parte Canal Ins. Co., 534 So.2d 582, 584 (Ala. 1988) (quoting Brooks v. Peoples Nat'l Bank of Huntsville, 414 So.2d 917, 919 (Ala. 1982) ). In determining whether the claims 'arose out of the same aggregate core of operative facts,' this Court must determine whether '(1) the facts taken as a whole serve as the basis for both claims or (2) the sum total of facts upon which the original claim rests creates legal rights in a party which would otherwise remain dormant.' Canal Ins., 534 So.2d at 584."
Ex parte Cincinnati Ins. Cos., 806 So.2d 376, 380 (Ala. 2001).
As noted above, the crux of the federal action is Nautilus's obligations, if any, and Precision's rights, if any, under the policy. Likewise, Precision's declaratory-judgment claim and its claims of abnormal bad faith, bad-faith failure to settle, breach of the enhanced duty of good faith, fraud, and negligence are based upon either Nautilus's alleged refusal to perform what, Precision says, are Nautilus's duties under the policy or Nautilus's alleged misconduct in issuing the policy. Thus, the policy is the nucleus of each party's claims, and it is the facts concerning Nautilus's issuance of the policy, the facts concerning the manner in which Nautilus is handling Precision's claim under the policy, and the interpretation of relevant terms of the policy that "serve as the basis for" the parties' claims, or, put differently, the claims all " 'arose out of the same aggregate core of operative facts.' " Cincinnati Ins. Cos., 806 So.2d at 380 (quoting Canal Ins., 534 So. 2d at 584 ). As a result, litigating the parties' claims in the same forum would avoid "a substantial duplication of effort." Id. It would " 'avoid circuity of actions and ... enable the court to settle all related claims in one action and thereby avoid a wasteful multiplicity of litigation on claims that arose from a single transaction or occurrence.' " 806 So.2d at 379 (quoting Grow Grp., Inc. v. Industrial Corrosion Control, Inc., 601 So.2d 934, 936 (Ala. 1992) ). Accordingly, Precision's claims against Nautilus meet the logical-relationship test and are therefore compulsory counterclaims in the federal action. This Court's caselaw in similar cases between an insurer and its insured is in accord. See, e.g., Brooks Ins. Agency, 125 So.3d at 710 (holding that, under § 6-5-440, the insurer's first-filed, declaratory-judgment action in federal court precluded the insured's later-filed, state-court action because "all the claims in both the federal court and the state court arise from the same facts and circumstances-Nationwide's issuance of the insurance policies to Guster and its handling of Guster's ... claim"); Cincinnati Ins. Cos., 806 So.2d at 381 (holding that the insured's state-court claims that "depend[ed] on the homeowner's policy" that was the subject of the insurer's first-filed, declaratory-judgment action in federal court "meet the logical-relationship test" and noting that "[i]t would have served the *831 purposes of Rule 13 [, Ala. R. Civ. P.,] for [the insured] to have litigated her claims against [the insurer] in the same action in which [the insurer] sought a declaration of its rights and obligations under the homeowner's insurance policy; it would have avoided a multiplicity of actions, and all matters could have been resolved in one action"); and Canal Ins. Co., 534 So.2d at 583 (holding that, under § 6-5-440, the insurer's first-filed, declaratory-judgment action in federal court precluded the insured's later-filed, state-court action in a case where "[t]he facts and circumstances alleged in support of [the insured's] complaint arose out of the issuance of the insurance policy and the proof of loss claim filed with [the insurer]").
Because the federal action had been filed and was pending when Precision filed the state action, and because the claims Precision asserted against Nautilus in the state action are compulsory counterclaims in the federal action, Nautilus has demonstrated that it has a clear legal right under § 6-5-440 to dismissal from the state action. Accordingly, we grant the petition and issue the writ directing the trial court to enter an order dismissing Nautilus from the state action.
Case no. 1170235 (LFC)
As a threshold matter, we note that Precision contends in its brief to this Court that it has amended its complaint to clarify that its declaratory-judgment claim and its claims alleging abnormal bad faith, bad-faith failure to settle, and breach of the enhanced duty of good faith are asserted against Nautilus only. Precision has attached to its brief a copy of its amended complaint, which confirms Precision's contention that it is not asserting those four claims against LFC. See Precision's brief, Exhibit E. LFC agrees that Precision's amended complaint clarified that those four claims are no longer asserted against LFC. See LFC's reply brief, at 8. Accordingly, in addressing whether LFC has a clear legal right to dismissal of Precision's claims, we are concerned only with Precision's fraud and negligence claims against LFC.[4]
Initially, LFC argues that it was entitled to a dismissal of Precision's claims under Rule 12(b)(6) because, LFC says, those claims fail to state a claim upon which relief can be granted. However, the denial of a motion to dismiss based upon Rule 12(b)(6) is not reviewable by petition for a writ of mandamus. Ex parte Kohlberg Kravis Roberts & Co., L.P., 78 So.3d 959 (Ala. 2011). "Any alleged error in the [trial] court's decision to deny [LFC's] motion to dismiss for failure to state a claim ... can be adequately remedied by appeal." 78 So.3d at 979. Accordingly, we do not address LFC's arguments in this regard.
LFC also argues that it was entitled to a dismissal of Precision's claims under Rule 19, which, as noted, provides for the joinder of persons needed for just adjudication, i.e., an indispensable party. LFC argues that, if Nautilus is dismissed from the state action (as it is to be pursuant to this opinion), then Precision's claims against LFC are also due to be dismissed because, LFC says, Nautilus is an indispensable party to those claims. However, LFC has not cited any authority indicating that the denial of a motion to dismiss predicated *832 upon a failure to join an indispensable party is an issue properly reviewable by petition for a writ of mandamus. See Ex parte U.S. Bank Nat'l Ass'n, 148 So.3d 1060, 1064 (Ala. 2014) (setting forth the issues this Court will review by petition for a writ of mandamus).
Regardless, even if this issue is reviewable by petition for a writ of mandamus, LFC has failed to satisfy each of the four elements required for issuance of the extraordinary writ. Specifically, LFC has failed to demonstrate that the trial court had " 'an imperative duty ... to perform, accompanied by a refusal to do so.' " Caremark, 229 So.3d at 756 (quoting Integon Corp., 672 So.2d at 499 ) (emphasis added). Granted, if Nautilus was an absent indispensable party to Precision's claims against LFC, the trial court would have had a duty to dismiss the state action without prejudice. See Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1022 (Ala. 2003) (" 'The absence of a necessary and indispensable party necessitates the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand over for amendment.' " (quoting J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834, 850-51 (Ala. 1981) ) ). However, Precision included Nautilus as a defendant in the state action, and the trial court denied Nautilus's motion to dismiss. Thus, Nautilus has been a party to the state action since its inception. As a result, it would be illogical to conclude that the trial court had a duty to dismiss the state action for failure to join Nautilus, and that it refused to do so, when Nautilus has, at all times in the proceedings below, been a party to the action. It is only after this Court's decision in case no. 1170170 that Nautilus will no longer be a party to the state action, and it is therefore only after the issuance of this opinion that the trial court could even potentially incur any duty to dismiss the state action for failure to join an indispensable party.[5] Thus, because LFC cannot demonstrate that the trial court had a duty to dismiss the state action for failure to join an indispensable party and that it refused to do so, LFC is not entitled to the writ on that basis. Caremark, supra.
Lastly, LFC argues that it is entitled to a dismissal of Precision's claims because, LFC says, those claims are not ripe for adjudication and, thus, the trial court's subject-matter jurisdiction over those claims was not invoked. See Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 562 (Ala. 2005) ("Ripeness implicates subject-matter jurisdiction."). The only authority LFC cites in support of its argument is Ex parte Safeway Insurance Co. of Alabama, 990 So.2d 344 (Ala. 2008), in which this Court held that an insured's bad-faith claim against its insurer for refusal to pay uninsured-motorist benefits was not ripe-and thus did not invoke the trial court's subject-matter jurisdiction-until the insured established the amount of his damages. 990 So.2d at 352. This case, however, does not concern uninsured-motorist benefits, and nothing in Safeway provides that Precision's claims of fraud and negligence with respect to LFC's procurement of insurance are not ripe at this stage of the proceedings.
More significantly, even if we assume that Safeway is analogous to this case, LFC ignores this Court's more recent decision in Ex parte Safeway Insurance Co. of Alabama, 148 So.3d 39 (Ala. 2013), in which this Court concluded that an insured's *833 assertion of a bad-faith claim for refusal to pay uninsured-motorist benefits before any adjudication of the uninsured motorist's liability and the amount of damages was not a ripeness issue that affected the trial court's subject-matter jurisdiction. In rejecting the insurer's argument that the insured's bad-faith claim was not ripe and that the trial court therefore lacked subject-matter jurisdiction over the claim, this Court stated:
"We disagree that the trial court lacks subject-matter jurisdiction. The trial court does have the authority to hear the case and may dismiss it on the merits. The outcome of the case ought to depend on a Rule 12(b)(6) motion to dismiss, not a Rule 12(b)(1) [ (lack of subject-matter jurisdiction) ] motion to dismiss, and proving fault and damages ought to be an evidentiary or elemental prerequisite for showing an insurer's bad-faith failure to pay benefits, not a jurisdictional prerequisite."
148 So.3d at 42 (third and fourth emphasis added; footnote omitted). That is to say, the insured's bad-faith claim, filed before the uninsured motorist's liability and the resulting damages had been established, potentially suffered from a defect in merit but, regardless, did not deprive the trial court of subject-matter jurisdiction over the claim.
In this case, LFC argues that Precision cannot recover against LFC for fraudulently procuring inadequate insurance or for negligently failing to procure adequate insurance unless and until Precision is actually denied coverage for, or a defense against, the Williamses' claims. In accord with the more recent Safeway decision, that argument goes to Precision's ability to prove the merits of its claims, not to the subject-matter jurisdiction of the trial court to preside over those claims. See Safeway, 148 So.3d at 43 ("There are ... no problems with subject-matter jurisdiction merely because a party files an action that ostensibly lacks a probability of merit."). The trial court, as a court of general jurisdiction, Ala. Const. 1901, Art. VI, § 142, clearly has " ' "the constitutional and statutory authority" to hear' " the types of claims Precision has asserted against LFC. Id. (quoting Russell v. State, 51 So.3d 1026, 1028 (Ala. 2010), quoting in turn Ex parte Seymour, 946 So.2d 536, 538 (Ala. 2006) ). Thus, LFC has not demonstrated that it has a clear legal right to dismissal from the state action based on a lack of subject-matter jurisdiction over Precision's claims.
Conclusion
Nautilus has demonstrated that, under § 6-5-440, it has a clear legal right to dismissal from the state action. Accordingly, we grant Nautilus's petition and issue the writ directing the trial court to dismiss Nautilus from the state action. LFC has failed to carry its burden of demonstrating that it has a clear legal right to dismissal from the state action. Accordingly, LFC's petition is due to be and is hereby denied.
1170170-PETITION GRANTED; WRIT ISSUED.
1170235-PETITION DENIED.
Stuart, C.J., and Bolin, Parker, Shaw, Main, Wise, Sellers, and Mendheim, JJ., concur.

Williams's complaint named other defendants who are not parties to these appellate proceedings.

Although Precision labeled its claims "cross-claims," those claims are actually third-party claims because neither Nautilus nor LFC was a party to the Williamses' action. Compare Rule 13(g), Ala. R. Civ. P., providing that a party may assert cross-claims against a co-party, with Rule 14(a), Ala. R. Civ. P., providing that a defendant may file, as a third-party plaintiff, a complaint "upon a person not a party to the action." (Emphasis added.)

Nautilus's complaint indicates that Nautilus is a citizen of Arizona; that Precision and the Williamses are citizens of Alabama; and that the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332 (providing that federal district courts have jurisdiction of all civil actions in which the matter in controversy exceeds $75,000 and citizens of different states are involved).

We note that Precision's amended complaint also asserted a breach-of-fiduciary-duty claim against LFC. However, Precision filed the amended complaint after the trial court denied LFC's motion to dismiss, and nothing in the materials before this Court indicates that LFC has moved the trial court to dismiss that claim. Accordingly, we are not concerned with that claim in this opinion, and nothing herein should be construed as a commentary on that claim.

To be clear, we offer no opinion on whether Nautilus is an indispensable party to Precision's claims against LFC. We simply note that, even if it is, the trial court, to this point, has had no duty to dismiss the state action for failure to join Nautilus and, thus, cannot be held in error for refusing to perform a duty it was never required to perform.